## IN RE ASSESSMENT OF TAXES, PACIFIC GUANO & FERTILIZER COMPANY, APPEAL BY THE ASSESSOR FROM TAX APPEAL COURT, FIRST TAXATION DIVISION.

ARGUED MARCH 13, 1905.          DECIDED MARCH 27, 1905.

FREAR, C.J., HARTWELL, J., AND CIRCUIT JUDGE DE BOLT
IN PLACE OF WILDER, J.

INCOME TAX—*loss not an actual loss at the time of writing it off to the account of profit and loss.*

The tax-payer in 1894 paid $85,000 for Laysan Island guano rights, supposing that there were 84,000 to 85,000 tons of guano, and paid $15,000 for stations there. It conducted the business of getting out and selling guano, making until July 1, 1904, losses in some years and profits in others, dividing in all $60,000 dividends, but finally discovering that the guano bed was almost exhausted wrote off, shortly before July 1, 1904, $50,000 to the account of profit and loss to be deducted from their income. Held: The loss resulted from an unfortunate investment at the outset, and did not actually occur at the time it was written off on the books of the tax-payer.

Statement of the case: The Pacific Guano & Fertilizer Company was a corporation organized for "exploiting the guano beds on Laysan island." It is obtained from an expert an estimate of the probable available guano there as 84,000 to

85,000 tons and in 1894 paid $85,000 therefor. The account of the transactions concerning the guano shows losses until 1896, when the profits were $17,106.05; 1897, $10,336,41; 1898, $3,883.58; 1899, $4,942.77; 1900, loss, $11,762.47; 1901, profit, $11,481.24; 1902, $9,623.87; 1903, $10,549.23. The company paid $15,000 for its stations. They finally discovered that "the guano bed was almost exhausted and there was only about one-half what the expert had estimated." Thereupon, shortly before making its income tax return for the year ending July 1, 1904, the company wrote off $50,000 to the account of profit and loss, which sum they claim to be a loss properly deducted from their income. Their return for the year in question showed $825,586.78, receipts from sales of the guano from the time operations were begun, and $801,-129.74 as deductions and exemptions, the difference of $24,-457.04 being returned as net income. The items making up the amount returned for deductions and exemptions include (2) interest paid within the previous year, $1,359.07; (3) amounts expended in the purchase or production of the property (of which the sales were returned as above), $629,748.47; (9) losses otherwise actually incurred during the previous year, $50,000; (this is the item in dispute;) (10) necessary expenses actually incurred in carrying on the business or in managing the property, $111,473.59; (11) taxes and license fees paid within the previous year, $7,131.12; (12) royalty paid to the government for guano from Laysan, $1,417.49. Schedule C of the return showed $60,000 dividends paid. The assessor declined to allow the $50,000 as a loss during the previous year, but the tax appeal court held that it was "an actual loss incurred in trade and is properly deductible under the income tax law," from which decision the assessor appealed.

The tax-payer claims that the loss of $50,000 was impossible to ascertain before it was written off the books of the company in the taxation year, and that "until then no actual tangible losss could be demonstrated, it being merely estimated there might be a shortage of some 5,000 tons."

OPINION OF THE COURT BY HARTWELL, J.

We are unable to regard this loss as one which occurred during the year 1903, when it was written off on the books of the tax-payer. The guano had not depreciated in value; none of it had been lost. It did not exist to the extent supposed at the time of the purchase. The income from collecting and selling ceased when the deposits were removed. The loss which was finally ascertained upon the termination of that business did not occur at the time when it was learned that the guano supply had failed, but it occurred when the purchase money was paid. The transaction may be compared to the purchase of timber land on a supposition that it contained a larger amount of timber trees than upon examination it is found to contain. The annual income from getting out and selling lumber from the land, as long as there was any to get out, continued and was profitable in like manner as it would have been if the estimate of trees had been correct. The income ceased when the trees were taken off, but the loss was made at the time of the purchase. If the purchase price had been based on the actual and not on the supposed condition of the property there would have been no loss and the annual income from the business as long as it continued could not have been affected by the length of time that it could be carried on. In one sense a loss is made at the time when one learns that he has not got what he thought he had. In another sense, and as we think in the meaning of the statute, there is in such case no actual loss other than results from an unfortunate investment in the outset.

The decision of the tax appeal court is reversed.

*A. G. M. Robertson* for assessor.

*Kinney, McClanahan & Cooper* for tax-payer.